[No. A043356. First Dist., Div. Five. Feb. 22, 1990.]

THOMAS SHEPPARD, Plaintiff and Appellant, v.
MORGAN KEEGAN & COMPANY, Defendant and Respondent.

COUNSEL

Thomas F. Doyle for Plaintiff and Appellant. (PC)Peter R. Boutin, Helen C. Smith and Keesal, Young & Logan for Defendant and Respondent.

OPINION

HANING, J.—Plaintiff/appellant Thomas Sheppard appeals a summary judgment in favor of defendant/respondent Morgan Keegan & Company in appellant's action for breach of contract, fraud and wrongful termination. He contends triable issues of fact exist concerning the duration and nature of his employment contract and whether good cause existed for terminating his employment.

FACTS

Respondent is an investment banking and stock brokerage firm headquartered in Memphis, Tennessee. At some time prior to mid-August 1985, a representative of respondent contacted appellant in California and advised him that respondent was looking for someone with appellant's qualifications for employment in its firm. In response to a request, appellant sent respondent a resume. In mid-August appellant received a telephone call from Richard McStay, respondent's managing director, inviting him to Memphis for an employment interview. During an interview at its Memphis office on

August 30, 1985, respondent offered appellant a position there as an analyst of technology-oriented stocks. The annual base salary was $60,000, with an expected minimum bonus of $25,000. The offer was for an indefinite term. At the time, appellant was employed in a similar position with a California company. Appellant returned to California without making a decision about the position. On September 13 he telephoned respondent to accept the offer. His acceptance did not include an agreement to work for a specified period of time.

The same day he accepted respondent's offer appellant quit his California job. On September 17 he flew to Memphis to obtain housing, set up his office, meet his secretary, fill out insurance forms, and order business cards. Apparently, appellant was to start on the payroll on September 16 or 17, and commence working full time on October 3. During the week of September 16-20, appellant made at least two visits to respondent's office wearing jeans and a tee shirt. Respondent's managing director told him such casual attire was inappropriate for the office. Appellant wore the same clothing on his second visit. On September 21 or 22 he leased an apartment, and then returned to California to complete his packing. On October 1 McStay informed him by telephone that respondent had decided to "separate" him before he began actively working. When appellant asked why he was being terminated, McStay replied that he did not know, and added that he was upset by the termination. Respondent reimbursed him for expenses incurred for the two trips to Memphis, but not for his apartment deposit or any salary.

## DISCUSSION

The rules for summary judgment are well established and require no exhaustive repetition. (See, e.g., *Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 274 et seq.)

Labor Code section 2922 provides, in part, that "[a]ll employment, having no specified term, may be terminated at the will of either party on notice to the other. . . ." ■ This section establishes a presumption that in the absence of an express oral or written agreement which specifies the length of employment or grounds for termination, the employment is at will. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 677 [254 Cal.Rptr. 211, 765 P.2d 373].) It is undisputed that the employment agreement here defined no specific grounds for termination. It is also undisputed that appellant's employment with respondent was permanent, but not for any fixed time. A

permanent employment contract, even though a specific salary is negotiated annually, is considered a contract for an indefinite period and, absent public policy considerations or statutory requirements, is terminable at will by either party for any reason. (*Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 727, fn. 12 [73 Cal.Rptr. 213, 447 P.2d 325]; *Newfield* v. *Insurance Co. of the West* (1984) 156 Cal.App.3d 440, 444 [203 Cal.Rptr. 9]; *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549, 551, 553 [171 Cal.Rptr. 917].)

The presumption of an at-will contract may be overcome by evidence that, despite the absence of a specified term, the parties agreed that the employer's power to terminate would be limited in some way, for example, that termination would be permitted only for "good cause." (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 677; *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 324-325.)

▇ In any contract, courts seek to enforce the actual understanding of the parties. In determining whether there is an implied-in-fact promise that an employee will be discharged only for good cause, courts consider a variety of factors, including the employer's personnel policies and practices, its actions or communications indicating assurance of continued employment (e.g., promotions, lack of criticism), the practices of the particular type of employment, and the employee's longevity. (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 676; *Pugh* v. *See's Candies, Inc.*, *supra*, 116 Cal.App.3d at p. 327.) Appellant obviously had no evidence of longevity. He *did not present any evidence of respondent's personnel policies or the practices within his profession.* Conversely, respondent stated that its policy is that its employment relationships are terminable at any time by either party. As to behavior by respondent indicating assurance of continued employment, case law has considered this factor in conjunction with employees who have actually been on the job for a period of years. Thus, the managing director's statement to appellant that he would receive a $60,000 annual salary plus $25,000 guaranteed minimum bonus, and be earning between $110,000 and $120,000 within one year is not the kind of communication *from an employer that indicates assurance of ongoing employment* absent good cause for termination.

▇ There is also inherent in every contract a covenant of good faith and fair dealing. (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 684; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) This covenant implies a promise that each party will refrain from doing anything to injure the right of the other to receive the benefits of the agreement. (*Egan* v. *Mutual of Omaha Ins. Co.*, *supra*, at p. 818.) The precise nature and extent of the duty imposed by the covenant

depends on the contract and the parties' justified expectations. (*Ibid.*) "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." (*Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 500 [220 Cal.Rptr. 818, 709 P.2d 837], citations and internal quotation marks omitted.)

██ Although appellant has not demonstrated that respondent required good cause to terminate him, implicit in such an employment agreement, and certainly implicit within the implied covenant of good faith and fair dealing, is the understanding that an employer cannot expect a new employee to sever his former employment and move across the country only to be terminated before the ink dries on his new lease, or before he has had a chance to demonstrate his ability to satisfy the requirements of the job. Further, the employer's conduct here is governed by the doctrine of promissory estoppel, which provides: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (Rest.2d Contracts, § 90(1); see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 248.)

The Supreme Court of Minnesota applied the doctrine in a similar situation in *Grouse* v. *Group Health Plan, Inc.* (Minn. 1981) 306 N.W.2d 114. In *Grouse,* the plaintiff left his employment after accepting a new offer of employment from defendant. When defendant revoked its offer before plaintiff commenced work on the new job, plaintiff sued for damages. Defendant contended plaintiff was not entitled to recover because the agreement was terminable at will. The Minnesota Supreme Court applied promissory estoppel, concluding "that under the facts of this case the [plaintiff] had a right to assume he would be given a good faith opportunity to perform his duties to the satisfaction of [defendant] once he was on the job." (*Id.*, at p. 116.) We conclude the same reasoning applies here.

██ Respondent relies on two alleged instances of good cause, which it contends justifies its conduct. The first is the conclusory statement in McStay's declaration that appellant made "disparaging and demeaning remarks" regarding respondent and the Memphis area. ██ Declarations supporting motions for summary judgment must contain evidentiary, rather than ultimate facts, or conclusions. (*Scheble* v. *Nell* (1962) 200 Cal.App.2d 435, 439 [19 Cal.Rptr. 375]; 6 Witkin, Cal.Procedure, *supra*, §§ 287-289.) ██ McStay's reference to disparaging remarks amounts to no more than a conclusion, and cannot be used to support good cause.

The second instance is another statement in McStay's declaration that appellant appeared at respondent's office inappropriately attired. However, it appears that this was on two occasions *prior* to appellant's actual starting date, and during the time he was house-hunting and in transit. Further, McStay's declaration does *not* state that appellant was terminated for this reason, and in appellant's deposition testimony, upon which respondent also relies, appellant states that McStay told him he (McStay) did not know why appellant was being terminated. This is a disputed issue of fact, and cannot be resolved by summary judgment.

In light of our disposition, it is unnecessary to discuss appellant's remaining contentions.

The summary judgment is reversed.

Low, P. J., and King, J., concurred.