MEERMAN v MURCO, INC

Docket No. 146860. Submitted December 15, 1993, at Grand Rapids. Decided June 7, 1994, at 10:00 A.M. Leave to appeal sought.

Debra Meerman brought an action in the Kalamazoo Circuit Court against Murco, Inc., seeking damages for repudiation by the defendant of an employment contract after the plaintiff had terminated her prior employment in order to accept the defendant's offer of employment. The court, Richard R. Lamb, J., granted summary disposition for the defendant, holding that the plaintiff was an at-will employee and that she had failed to show that she could be discharged only for just cause. The plaintiff appealed, arguing that her claim was based not only on wrongful discharge, but also on promissory estoppel and, accordingly, that the court erred in holding that summary disposition was appropriate because she was an at-will employee.

The Court of Appeals *held:*

Although the trial court erred in treating the plaintiff's action as one for wrongful discharge, it reached the right result, because this case is factually indistinguishable from *Barnell v Taubman Co, Inc,* 203 Mich App 110 (1993), in which it was held that a claim based on promissory estoppel is not established by the giving up of one's prior employment, and Administrative Order No. 1994-4 compels the same result in this case.

Affirmed.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Martin R. Sturm*), for the plaintiff.

*Miller, Canfield, Paddock & Stone* (by *Kevin M. McCarthy*), for the defendant.

Before: Neff, P.J., and Weaver and K. B. Glaser,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiff, Debra Meerman, appeals as of right from an order of the trial court granting summary disposition to defendant, Murco, Inc. Plaintiff claims that the trial court erred in holding that her cause of action in this case was contingent upon her establishing that a just-cause employment relationship existed. We affirm, but for reasons other than those expressed by the trial court.

I

One day in May 1990, defendant's president, Paul Murray, Sr., asked plaintiff, while she was at work at the Aries Cafe, if she was interested in working at defendant. At that time, plaintiff, who was employed full-time as a traffic manager at Biggs-Gilmore and part-time at the Aries Cafe, told Murray that she was not interested in seeking other employment. On a later date, Murray returned to the Aries Cafe with Richard Vesta, a vice president at defendant, and the two of them discussed with plaintiff the possibility of her employment by defendant and indicated that, if she came to work at defendant, she would be working for Vesta. Once again, plaintiff declined and told them that she was not interested in seeking new employment because she was happy at her current position.

Vesta later contacted plaintiff and asked her at least to come out and speak with him and Murray. Plaintiff thereafter interviewed with both Murray and Vesta at defendant's plant. During the interview, which was held in late May or early June 1990, plaintiff was offered the position of administrative assistant to Vesta at a salary of $23,000 a year plus benefits, which was much more than she was making at Biggs-Gilmore. Plaintiff did not

accept the position at that time, however. On June 25, 1990, plaintiff spoke with Vesta on the telephone and orally accepted the offer of employment. Plaintiff later met briefly with Vesta and informed him that she might be moving out of state within the next six months. Vesta replied that plaintiff was worth taking that risk.

On June 29, 1990, plaintiff resigned her position at Biggs-Gilmore so that she could begin employment with defendant on July 23, 1990.

On July 23, 1990, plaintiff arrived for work at defendant and learned that Vesta's employment with defendant had been terminated. On that same day, Murray met with plaintiff and offered her a position as his secretary, which plaintiff accepted. On July 24, 1990, plaintiff returned for work and was informed that the position as Murray's secretary was no longer available. Plaintiff subsequently contacted her former employer, Biggs-Gilmore, but was told that her former position was no longer available.

Plaintiff brought suit against defendant, alleging that she was entitled to recovery under theories of wrongful discharge and promissory estoppel. In count i of her complaint, plaintiff alleged that defendant's refusal to provide the promised position of employment constituted a breach of the employment contract. In count ii, she alleged that she had relied to her detriment on defendant's promise of employment and, as a result, suffered loss of employment, wages, and other benefits associated with employment.

Defendant thereafter moved for summary disposition, arguing that plaintiff was an at-will employee and, therefore, could not maintain a cause of action against defendant for breach of contract. Defendant further argued that plaintiff's promissory estoppel claim must also fail because no

promise was made to plaintiff regarding the duration of her employment or that it would be anything other than at will. The trial court determined that because plaintiff was an at-will employee, summary disposition should be granted pursuant to MCR 2.116(C)(10) with regard to both counts of her complaint.

II

Plaintiff claims that the trial court erred in holding that her cause of action was contingent upon her establishing that she was a just-cause employee. She claims that she did not plead a *Toussaint*-type (*Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 [1980]) wrongful discharge claim, but rather a breach of contract claim under the principles of promissory estoppel and detrimental reliance. In support of her argument, plaintiff relies on *Hackett v Foodmaker, Inc,* 69 Mich App 591; 245 NW2d 140 (1976), and *Filcek v Norris-Schmid, Inc,* 156 Mich App 80; 401 NW2d 318 (1986). In *Hackett,* the plaintiff obtained an early release from the Navy and moved his family, at considerable expense to himself, to undertake employment with the defendant. However, the position promised to the plaintiff was given to someone else after the defendant learned of the plaintiff's participation in an antitrust suit against it. In *Filcek,* the plaintiff had permanent employment with a car dealership when the defendant offered him employment. The day following the plaintiff's resignation from his job at the dealership, the plaintiff was notified that the position offered him by the defendant was no longer available. The plaintiff in *Filcek* was unable to regain his job at the car dealership.

In both *Hackett* and *Filcek,* this Court found

"distinguishing features" that removed those cases from the general rule of at-will employment. *Filcek, supra,* p 85; *Hackett, supra,* pp 594-595. Both the *Hackett* and the *Filcek* panels of this Court relied upon the defendants' repudiation, coupled with the plaintiffs' actions in reliance on the contracts, to conclude that the plaintiffs had a cause of action. See *Filcek, supra,* pp 84-85.

### III

Defendant argues that there can be no liability even under a promissory estoppel theory because plaintiff's employment would have been terminable at will at any time. In support of its position, defendant relies upon *Cunningham v 4-D Tool Co,* 182 Mich App 99; 451 NW2d 514 (1989), and *Marrero v McDonnell Douglas Capital Corp,* 200 Mich App 438; 505 NW2d 275 (1993).

In *Cunningham,* the plaintiff responded to a newspaper advertisement placed by the defendant that indicated its need for a tool and die worker in Mesick, Michigan. After the defendant offered him the job, the plaintiff gave up his job, made improvements to a lot he owned in Mesick, and made arrangements to move his mobile home. However, when the plaintiff appeared at the defendant's plant, he was advised that the job offered was not available.

The *Cunningham* panel of this Court disagreed with the *Filcek* panel's conclusion that an employer's repudiation of a contract before the date set for the plaintiff's performance is a distinguishing feature. *Cunningham, supra,* pp 104-105. The *Cunningham* panel also found the plaintiff's relinquishment of his employment and the moving of his home and family to be customary and necessary incidents of changing jobs rather than a

distinguishing feature. *Id.,* pp 105-106. The *Cunningham* panel noted that the defendant did not bargain for the plaintiff to resign from his prior employment and to move his family to Mesick. The *Cunningham* panel also focused on the fact that the defendant did not seek out the plaintiff specifically and induce him to take the job. *Id.,* p 106.

In *Marrero, supra,* p 443, this Court relied upon the *Cunningham* case in stating:

> [R]esignation from one position to assume another and relocation of family would be customary and necessary incidents of changing jobs rather than consideration to support a promissory estoppel claim.

IV

In *Barnell v Taubman Co, Inc,* 203 Mich App 110; 512 NW2d 13 (1993), the plaintiff was a long-term employee of Rapistan and, in January 1984, he became its vice president of finance. In the spring of 1985, an employment search company contacted the plaintiff and advised him that the defendant was seeking to fill a new position of vice president of financial services. At the time, the plaintiff was not looking to change positions, but he eventually agreed to work for the defendant. He moved from Grand Rapids to the Detroit area. After working for the defendant for about 1½ years, the plaintiff was terminated from his employment without prior notice. The plaintiff brought suit against the defendant under several theories, including a promissory estoppel claim.

With regard to the promissory estoppel claim, this Court in *Barnell, supra,* p 122, stated:

We agree with plaintiff that the trial court incorrectly ruled that promissory estoppel is "just another way of rephrasing *Toussaint*," because promissory estoppel is a claim that is separate from a claim of wrongful discharge.

However, this Court affirmed the trial court's grant of summary disposition with regard to the plaintiff's claim of promissory estoppel, despite the fact that the defendant specifically sought the plaintiff and induced him to leave his position at Rapistan, stating, *id.*:

> The elements of promissory estoppel are: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. [*Schipani v Ford Motor Co,* 102 Mich App 606, 612-613; 302 NW2d 307 (1981).] In this case, plaintiff left his position at Rapistan and moved from Grand Rapids to the Detroit area. This is insufficient to establish reliance. [*Marrero, supra,* p 443] (resignation of one's position to assume another and relocation of one's family are customary and necessary incidents of changing jobs rather than consideration to support a claim of promissory estoppel).

We find *Barnell* to be factually indistinguishable from the present case and, therefore, are compelled by Administrative Order No. 1994-4 to reach the same result. We therefore affirm the trial court's grant of summary disposition in this case.

Were we not bound by the administrative order, we would find that Vesta's and Murray's actions in

specifically seeking out plaintiff and inducing her to leave her previous employer were "distinguishing features" that would remove this case from the general rule regarding at-will employment, and we would reverse the grant of summary disposition with regard to plaintiff's promissory estoppel claim.

Affirmed.