Carl J. GORHAM, Appellant,

v.

BENSON OPTICAL, Respondent.

No. C1–95–464.

Court of Appeals of Minnesota.

Nov. 7, 1995.

Paul J. Lukas, Nichols, Kaster & Anderson Minneapolis, for appellant.

Norman J. Baer, Thomas E. Jamison, Fruth & Anthony, P.A., Minneapolis, for respondent.

Considered and decided by NORTON, P.J., and RANDALL and DAVIES, JJ.

## OPINION

DAVIES, Judge

Appellant contends the district court erred in dismissing his claims for breach of contract, promissory estoppel, and fraud that arose from termination of an at-will employment contract. We affirm summary judgment on the fraud and breach of contract claims, but reverse summary judgment on the promissory estoppel claim and remand for further proceedings.

## FACTS

In early September 1993, appellant Carl Gorham received a phone call from Ed Iwinski about a job opportunity with respondent Benson Optical. At that time, Gorham earned $38,000 annually working as a store manager for LensCrafters, but indicated he was interested in employment with Benson Optical. Iwinski, who apparently had been offered the job of chief operating officer (COO) for Benson Optical, told Gorham that he was not yet part of the decision-making process on hiring, but would forward Gorham's name to Benson Optical. The next day, Benson Optical's eastern regional manager, Sue Opahle, called Gorham to schedule an interview for an area manager position.

On September 15, 1993, Opahle interviewed Gorham in Chicago. During this interview, Gorham came to believe that Iwinski was effectively Opahle's boss and the COO at Benson Optical.

On September 18, Gorham called Opahle to inquire about the status of his application. Opahle offered him the job of area manager for half of North Carolina and some stores in Florida and Kentucky. She offered him a $50,000 annual salary and discussed relocation. Opahle described the terms of employment over the phone and promised to send a confirming letter and employee packet in two days. Gorham told Opahle that he accepted the position provisionally, and, if he changed his mind, he would notify her within two days. Otherwise, he would give LensCrafters his notice of termination.

When Gorham did not receive the packet on September 20, he called Benson Optical to inquire. Someone in the office called Gorham back, said the packet was in the mail, and reassured him that the deal was finalized so he could give LensCrafters notice. On September 21, Gorham gave LensCrafters his two-week notice of resignation. LensCrafters attempted to keep Gorham in its employment with an offer of a raise, but Gorham declined.

When Gorham received the packet a few days later, it contained two shortcomings, which he called to Benson's attention. Gorham received a corrected letter, which asked

that he sign and return it as acceptance of the terms of employment. Gorham signed this letter, but never returned it because he had started having reservations about his employment with Benson Optical.

On about September 30, Iwinski informed Benson Optical's vice president of human resources, Fran Scibora, that he was declining the COO position. Scibora, Opahle, and Benson Optical's chief financial officer, Dominic Sblendorio, immediately contacted Gorham and three other new employees who had been recommended by Iwinski, asking for their reactions to the fact that Iwinski would not be working for Benson Optical. Gorham responded that Iwinski's absence did not change his decision to accept the job. When Gorham asked if Iwinski's departure affected Gorham's job, Scibora assured him that it would not.

Gorham's last day of work for LensCrafters was October 1. On October 3, he flew to Minneapolis for Benson Optical's national sales meeting. On October 4, Scibora, Opahle, and Sblendorio met with Gorham for what they called a "getting to know you" meeting. At the meeting they asked him for the completed employee forms they had sent him; Gorham turned in all the forms except the acceptance letter. The meeting then turned into another interview in which they reviewed Gorham's skills and aptitudes. Scibora finally told Gorham that he did not possess the skills necessary for the area manager position. Gorham had the clear impression that he had been or would be terminated.

This group also met with and terminated three other employees whom Opahle had hired at Iwinski's suggestion. In a letter to Gorham dated October 15, Benson Optical explained that it had terminated his position because Iwinski had declined the job as COO because of a "change [in] the requirements of the Area Manager's position" and because Gorham's "skills and abilities did not satisfy the requirements for the new direction in which the company is going."

Gorham brought this action claiming breach of contract, fraud, promissory estoppel, and defamation. The district court granted Benson Optical's motion for summary judgment on all claims. Gorham appeals the breach of contract, promissory estoppel, and fraud claims.

## ISSUES

I. Did the district court erroneously grant summary judgment on Gorham's breach of contract claim?

II. Did the district court erroneously grant summary judgment on Gorham's promissory estoppel claim?

III. Did the district court erroneously grant summary judgment on Gorham's fraud claim?

## ANALYSIS

### I. Contract

A party may manifest acceptance of an agreement by written or spoken words, or by conduct and actions. *Holt v. Swenson,* 252 Minn. 510, 516, 90 N.W.2d 724, 728–29 (1958). The record establishes that a contract existed here before October 4 because, even though Gorham did not return the acceptance letter to Benson Optical, he demonstrated his acceptance by verbally agreeing to take the job, resigning his former employment, flying to Chicago at his own expense, and reporting for the sales meeting on October 3. He also admitted that, at that time, he considered himself hired.

The hiring letter, however, fell short as a matter of law of guaranteeing Gorham employment for 90 days as he claims. The relevant statement merely informed Gorham that he needed to produce in 90 days or face termination. Because the contract was at-will and there are no issues of fact as to its terms, the district court properly granted summary judgment on Gorham's breach of contract claim.

### II. Promissory Estoppel

Gorham alternatively contends that the district court erred in granting summary judgment for Benson Optical on the promissory estoppel claim. We agree.

The elements of promissory estoppel are:

A promise which the promisor should reasonably expect to induce action or forbearance * * * on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Restatement of Contracts § 90 (1932),[1] *quoted in Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981).

█ Respondents argue that promissory estoppel is not available when a contract exists. This is true (but with one exception). *See Banbury v. Omnitrition Int'l,* 533 N.W.2d 876, 881 (Minn.App.1995) (holding promissory estoppel applies only where contract does not exist). In *Grouse,* however, the supreme court in effect found an exception to this rule. The exception applies when the contract is of a type that provides no basis for a contract recovery, i.e., an at-will employment contract. 306 N.W.2d at 116. Then there is no bar to a promissory estoppel claim. *Id.*

In *Grouse,* the supreme court applied the doctrine of promissory estoppel to facts very similar to the present case and allowed the plaintiff to recover reliance damages. There, a pharmacy offered a pharmacist a job and, after the pharmacist accepted, resigned his current position, and declined another job offer, the pharmacy hired someone else. *Id.* at 115–16. Under those circumstances, despite the offer and acceptance of employment that had occurred, the supreme court found that

> no contract exists because due to the bilateral power of termination neither party is committed to performance and the promises are, therefore, illusory.

*Id.* at 116.

As a result, Minnesota courts now recognize *Grouse* as an "exception" allowing promissory estoppel recovery in cases of at-will employment contracts. *See, e.g., Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 882 (Minn.1986) (explaining current trends in construing employment contracts); *see also Eklund v. Vincent Brass & Alumi-*

*num Co.,* 351 N.W.2d 371, 373, 378 (Minn. App.1984) (relying on *Grouse,* court ruled that plaintiff produced sufficient evidence of reliance on promise to defeat summary judgment when employer's former president presented statement that plaintiff had been hired with clear understanding that his job would be permanent until retirement), *review denied* (Minn. Nov. 1, 1984).

Significant to this case, the *Grouse* court stated, in dictum: "[U]nder appropriate circumstances we believe section 90 [of the Restatement] would apply even after employment has begun." 306 N.W.2d at 116. Gorham presents the specific hypothetical situation the *Grouse* court's dictum addressed—a short time actually on the job. And, independent of the hypothetical and like Grouse himself, Gorham relied on the promise of a new job when he quit his job with LensCrafters and declined any renegotiations with them. Gorham came to Minneapolis to begin work on October 4, believing that he had been hired. Within a day, Benson Optical terminated him. These facts show Gorham's reasonable reliance on Benson Optical's promise of employment, his declining any other job in deference to his new job with Benson Optical, and the injustice to him when, on his first day of "employment," he went through a hostile re-interview process that led to his immediate termination.

We see no relevant difference between Gorham, who reported to the national sales meeting on his first day of employment, and Grouse, who was denied even one day on the job. Both men relied to their detriment on the promise of a new job, only to discover that the opportunity had disintegrated before they ever actually started working. Neither man had a "good faith opportunity to perform his duties." *Grouse,* 306 N.W.2d at 116. Given these facts, Gorham's claim fits squarely within the spirit of *Grouse* and is entitled to the benefit of promissory estoppel leading to reliance damages.

*Grouse* was explained in terms of implied contract. We consider it now more appropriate, however, to root our decision on pure

1. This provision has remained substantially the same in Restatement (Second) of Contracts § 90

(1981).

promissory estoppel doctrine. We do this based on developments in the law of promissory estoppel since *Grouse* and to reduce the risk of an inappropriate use of an expectation measure for damages. *See* E. Allan Farnsworth, *Farnsworth on Contracts* § 2.19, at 143–46 (1990) (discussing reliance versus expectation interests as measures of damage in promissory estoppel claims); *see also* Michael B. Metzger & Michael J. Phillips, *The Emergence of Promissory Estoppel as an Independent Theory of Recovery*, 35 Rutgers L.Rev. 472, 511–12 (1983) (discussing treatment of promissory estoppel as not just a substitute for elements of contract, but an independent theory of recovery). We point also to developments in the doctrine of good faith since the supreme court issued *Grouse*. *See, e.g.,* Deborah A. Schmedemann, *Working Backwards: The Covenant of Good Faith and Fair Dealing in Employment Law*, 16 Wm.Mitchell L.Rev. 1119 (1990) (exploring evolving principles of good faith in Minnesota employment law).

The district court erred when it granted summary judgment against Gorham's promissory estoppel claim.

### III. Fraud

▇▇ Gorham contends that the district court erred in granting summary judgment on his fraud claims. We disagree. In order to prove fraudulent misrepresentation, Gorham needed to establish that Benson Optical:

(1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

*M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn.1992).

Gorham claims Benson Optical made the following factual misrepresentations: that Iwinski's departure from Benson Optical would not affect Gorham's employment, that Iwinski was Benson Optical's COO, and that the second interview in Chicago was simply a "getting to know you interview."

The claim based upon the effect on Gorham's employment of Iwinski's decision fails because Gorham cannot establish that the employees who made the representations knew what the ultimate outcome would be. Hindsight now proves that the statement *became* false, but Gorham's fraud claim requires that Benson Optical, at the time of the statement, misrepresented "a past or present fact," not a future, unpredictable event. *See id.* (establishing a past or present fact as an element of fraud).

The claims based upon the other two statements also fail because Gorham has not shown that his damages are directly related to a second interview or to Iwinski's not being the COO.

### DECISION

The district court properly granted summary judgment on the breach of contract and fraud claims. The doctrine of promissory estoppel allows Gorham to recover good faith reliance damages when Benson Optical terminated him on his first day of employment, after Gorham had detrimentally and reasonably relied on the promise of new employment. Summary judgment on the promissory estoppel claim is reversed and remanded for further proceedings.

**Affirmed in part, reversed in part, and remanded.**