ROBERT W. GILLIS, APPELLEE AND CROSS–APPELLANT, V. THE
CITY OF MADISON, A CITY OF THE SECOND CLASS OF THE STATE
OF NEBRASKA, APPELLANT AND CROSS–APPELLEE.

540 N.W.2d 114

Filed December 1, 1995.   No. S–93–1091.

Gail S. Perry and David D. Zwart, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Joel E. Carlson and Richard E. Mueting, of Mueting & Stoffer, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

This is an appeal from an action for wrongful termination of employment. Defendant–appellant, the City of Madison (Madison), appeals from the judgment of the district court for

Madison County holding that the plaintiff–appellee, Robert W. Gillis, was wrongfully terminated from his position as city administrator of Madison. Prior to trial, both parties filed summary judgment motions. Gillis filed a motion for partial summary judgment as to the issue of liability, claiming that Madison did not follow the appropriate procedures for the removal of Gillis as required by the municipal code of Madison. Madison filed a motion for summary judgment, claiming that Gillis' employment was properly terminated by the acting mayor of Madison pursuant to Neb. Rev. Stat. § 17–107 (Reissue 1991). The district court granted partial summary judgment in favor of Gillis on the issue of liability. A bench trial was held on the issue of damages, and the court awarded Gillis $14,512.30. Gillis cross–appeals.

Madison assigns three errors. It contends that the district court erred (1) in sustaining Gillis' motion for partial summary judgment, finding Gillis' employment was wrongfully terminated on August 20, 1992; (2) in overruling Madison's motion for summary judgment; and (3) in awarding Gillis $14,512.30 in damages for wrongful termination. In his cross–appeal, Gillis assigns several errors concerning the amount of damages awarded. Since we hold that the mayor of Madison properly invoked his power to terminate Gillis' employment pursuant to § 17–107, we reverse the decision of the district court and remand the cause with direction.

The undisputed facts establish that on June 18, 1989, the city council of Madison offered a motion to offer Gillis the position of city administrator. The terms of employment under the city council motion were as follows: a base salary of $27,000; 3 weeks' vacation annually after the first year; Blue Cross–Blue Shield insurance; an employee retirement plan; and a cost–of–living and annual wage review, which had a 6–month probationary period. Gillis was hired as city administrator on July 17.

The terms of Gillis' employment did not include a term of employment or state a basis for which Gillis' employment could be terminated. The procedure for termination of the city administrator of Madison is derived from both a state statute and a Madison municipal code ordinance. Section 17–107 states

in relevant part, "The mayor, with the consent of the council, may appoint such officers as shall be required by ordinance or otherwise required by law. Such officers may be removed from office by the mayor." Madison Mun. Code, ch. 6, art. I, § 6–102, states in relevant part, "The City administrator may be removed at pleasure by vote of majority of all members of the Council with the approval of the Mayor."

On August 20, 1992, John Bomar, the acting mayor of Madison, sent Gillis a notice of termination, which stated, "[y]our authority over the employees of the City of Madison and your authority as City Administrator for the City of Madison is hereby terminated, effective immediately." The notice listed several reasons for his termination.

On December 2, Gillis' counsel filed a claim with the city clerk for Madison for compensation and benefits allegedly due to Gillis. The claim stated that Bomar's termination of Gillis' employment was null and void in violation of § 6–102.

On December 17, Gillis filed this action. Gillis alleged that Bomar was required to follow the removal procedure set forth in the city ordinance, rather than that set forth in § 17–107. He alleged that because Bomar did not follow the city ordinance, Gillis' employment was wrongfully terminated.

On February 10, 1993, in reaction to the lawsuit, the city council passed a resolution to ratify Bomar's action on August 20, 1992, terminating Gillis' employment. In the resolution, the city council stated, "The adoption of this procedure is solely in defense of the pending lawsuit and is not an admission that the previous method of termination was not effective or that this method of termination is necessary in any way."

On May 26, Gillis filed a motion for partial summary judgment, arguing that no genuine issue of fact existed as to whether his employment was wrongfully terminated on August 20, 1992. Madison also filed a motion for summary judgment, alleging that no material issue of fact existed and that Madison was entitled to judgment as a matter of law. The court sustained Gillis' motion for partial summary judgment, finding that there was no issue of material fact as to Madison's liability.

On September 9, 1993, the district court, after trial, awarded Gillis $14,512.30 for lost wages and benefits. Madison filed a

motion for new trial, which was overruled. This appeal followed.

> Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

*Poppleton v. Village Realty Co., ante* p. 353, 355, 535 N.W.2d 400, 402 (1995). "In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party or parties against whom the judgment is granted and gives such party or parties the benefit of all reasonable inferences deducible from the evidence." *Id.*

The critical issue in this case is whether the procedure for the removal of the city administrator of Madison set forth in § 6–102 supersedes a mayor's authority to terminate city officers under § 17–107. " 'Where there is a direct conflict between a city ordinance and a state statute, the statute is the superior law. . . .' " *Herman v. Lee*, 210 Neb. 563, 567, 316 N.W.2d 56, 59 (1982). However, if the city ordinance and the statute in question are not contradictory and can coexist, then both are valid. See *id.* We find that the procedures for removal of the city administrator provided for under § 17–107 and under § 6–102 are alternative procedures for removal that are not contradictory and that can coexist.

The state statute allows for the complete removal from office process to be conducted by the mayor in his discretion, while the city ordinance allows removal from office by initiation of the city council with final consent by the mayor.

Gillis contends that the city ordinance constitutes a special law regarding a specific subject, namely, the removal from office of the city administrator of Madison. His contention concludes that the ordinance should therefore control the state statute. If we followed his reasoning, the city ordinance would be in conflict with the state statute and this result would run contrary to the rule stated earlier from *Herman v. Lee*, 210 Neb. at 567, 316 N.W.2d at 59: " 'Where there is a direct conflict between a city ordinance and a state statute, the statute is the

superior law. . . .' "

A court has a duty to harmonize state and municipal legislation on the identical subject. *State v. Kubik*, 159 Neb. 509, 67 N.W.2d 755 (1954). When an ordinance is susceptible of two constructions, under one of which it is clearly valid, while under the other its validity may be doubtful, that construction which makes the ordinance clearly valid will be given. *State ex rel. Bouc v. School Dist. of City of Lincoln*, 211 Neb. 731, 320 N.W.2d 472 (1982); *Starman v. Shirley*, 162 Neb. 613, 76 N.W.2d 749 (1956).

Concluding that the mayor of Madison has the power to remove a city administrator under § 17–107, Bomar's notice of termination to Gillis on August 20, 1992, was effective and valid. "[W]hen employment is not for a definite term and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability." *Overmier v. Parks*, 242 Neb. 458, 462, 495 N.W.2d 620, 623 (1993). Accord *Renner v. Wurdeman*, 231 Neb. 8, 434 N.W.2d 536 (1989).

Gillis' employment was not for a definite term, and no restrictions were set forth either in the resolution passed by the council that offered Gillis the position or in § 17–107. Because the procedure invoked by Bomar was valid under § 17–107 and did not require termination for good cause, termination of Gillis' employment on August 20, 1992, was not wrongful. Therefore, Madison is entitled to judgment as a matter of law.

Since Madison is entitled to judgment relieving it of liability, we need not address Madison's other assignments of error or Gillis' assignments of error on cross–appeal concerning damages.

For the reasons stated above, the decision of the district court is reversed and the cause is remanded with direction to dismiss the petition.

REVERSED AND REMANDED WITH DIRECTION.