JULIE GOFF-HAMEL, APPELLANT, V.
OBSTETRICIANS & GYNECOLOGISTS, P.C., APPELLEE.
583 N.W. 2d 798

Filed January 29, 1999.   No. S-97-1007.

Stephanie R. Hupp, of McHenry, Haszard, Hansen & Roth, for appellant.

Margaret E. Stine, of Harding, Shultz & Downs, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Julie Goff-Hamel brought this action against Obstetricians & Gynecologists, P.C. (Obstetricians), seeking damages for breach of an alleged oral employment contract or, in the alternative, damages for detrimental reliance on a promise of employment. The trial court granted summary judgment in favor of Obstetricians, and Goff-Hamel appeals.

## SCOPE OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Foreman v. AS Mid-America*, 255 Neb. 323, 586 N.W.2d 290 (1998).

In reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998).

## FACTS

Goff-Hamel worked for Hastings Family Planning for 11 years. Prior to leaving Hastings Family Planning, Goff-Hamel was earning $24,000 plus the following benefits: 6 weeks' paid maternity leave, 6 weeks' vacation, 12 paid holidays, 12 sick days, an educational reimbursement, and medical and dental insurance coverage.

In July 1993, Goff-Hamel met with representatives of Obstetricians regarding the possibility of employment. Present at the meeting were Janet Quackenbush, the office manager; Dr.

George Adam, a part owner of Obstetricians; and Larry Draper, a consultant of Obstetricians involved in personnel decisions. Adam had approached Goff-Hamel in June 1993 about working for him as a patient relations and outreach coordinator at Obstetricians. Goff-Hamel initially declined the offer, explaining that she had made commitments to do some training in the fall and to hire and help train a new bookkeeper. Adam spoke to Goff-Hamel approximately 1 month later, asking her to reconsider and whether she was ready to "jump ship and come work for him." Goff-Hamel told Adam she would be interested in hearing some details, and an interview was set for July 27 at Adam's office.

At the meeting, Adam represented to Goff-Hamel that the position would be full time and would start at a salary of $10 per hour and that she would be provided 2 weeks' paid vacation, three or four paid holidays, uniforms, and an educational stipend. A retirement plan would start after the end of the second year, retroactive to the end of the first year. The job would not provide health insurance.

Goff-Hamel was offered a job with Obstetricians during the July 27, 1993, meeting, and she accepted the job offer at that time. She expressed concern that she be given time to finish some projects at Hastings Family Planning, and it was agreed that she would start her employment on October 4. Goff-Hamel gave notice to Hastings Family Planning in August, informing them that she would be resigning to take a job with Obstetricians.

Subsequently, Goff-Hamel went to Obstetricians' office and was provided with uniforms for her job. She was given a copy of her schedule for the first week of work, but did not receive a copy of the employee handbook.

On October 3, 1993, Goff-Hamel was told by Draper that she should not report to work the next morning as had been planned. Draper told her that Janel Foote, the wife of a part owner of Obstetricians, Dr. Terry Foote, opposed the hiring of Goff-Hamel.

The trial court found that there were no facts in dispute and that Goff-Hamel had not turned down any other employment opportunities between July and October 1993. The court found that she had terminated her employment at Hastings Family

Planning in reliance on an offer of employment from Obstetricians; however, the prospective employment agreement was not for a specific term of employment. The court noted that Goff-Hamel sought replacement employment, but was unable to obtain employment until April 1995, when she was employed part time at the rate of $11 per hour.

The trial court concluded that since Goff-Hamel was to be employed at will, her employment could be terminated at any time, including before she began working. The court concluded that under either contract law or promissory estoppel, Obstetricians was entitled to a judgment as a matter of law.

## ASSIGNMENTS OF ERROR

Goff-Hamel asserts that the trial court erred in sustaining Obstetricians' motion for summary judgment and in overruling her motion for summary judgment.

## ANALYSIS

In sustaining Obstetricians' motion for summary judgment, the trial court concluded as a matter of law that since Goff-Hamel's employment could have been terminated after 1 day without Obstetricians incurring liability, logic dictated that her employment could also be terminated before it started without liability.

It is undisputed that on July 27, 1993, Obstetricians offered Goff-Hamel employment and that she accepted. The oral agreement did not specify that the employment was for a definite period. We have consistently held that when employment is not for a definite term and there are no contractual, statutory, or constitutional restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses. See, *Myers v. Nebraska Equal Opp. Comm.*, 255 Neb. 156, 582 N.W.2d 362 (1998); *Gillis v. City of Madison*, 248 Neb. 873, 540 N.W.2d 114 (1995); *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994). Therefore, the trial court correctly determined as a matter of law that Goff-Hamel could not bring a claim for breach of an employment contract.

Goff-Hamel's second cause of action was based upon promissory estoppel. " '[T]he development of the law of

promissory estoppel "is an attempt by the courts to keep remedies abreast of increased moral consciousness of honesty and fair representations in all business dealings."'" *Rosnick v. Dinsmore*, 235 Neb. 738, 751, 457 N.W.2d 793, 801 (1990).

Promissory estoppel provides for damages as justice requires and does not attempt to provide the plaintiff damages based upon the benefit of the bargain. *Id.* It requires only that reliance be reasonable and foreseeable. It does not impose the requirement that the promise giving rise to the cause of action must be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee. *Hawkins Constr. Co. v. Reiman Corp.*, 245 Neb. 131, 511 N.W.2d 113 (1994); *Rosnick v. Dinsmore, supra.*

We have not specifically addressed whether promissory estoppel may be asserted as the basis for a cause of action for detrimental reliance upon a promise of at-will employment. In *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994), the employee was terminated from her job approximately 4 months after she had been hired. We determined that because the employee had worked for a time, the employer had kept his promise to employ the plaintiff and that promissory estoppel was not available. We did not consider whether a cause of action based upon promissory estoppel could be stated by a prospective at-will employee who had been induced to leave previous gainful employment based upon the promise of other employment, but who did not commence employment at the new job.

Other jurisdictions which have addressed the question of whether a cause of action for promissory estoppel can be stated in the context of a prospective at-will employee are split on the issue. Some have held that an employee can recover damages incurred as a result of resigning from the former at-will employment in reliance on a promise of other at-will employment. They have determined that when a prospective employer knows or should know that a promise of employment will induce an employee to leave his or her current job, such employer shall be liable for the reliant's damages. Recognizing that both the prospective new employer and the prior employer could have fired the employee without cause at any time, they have concluded that the employee would have continued to work in his

or her prior employment if it were not for the offer by the prospective employer. Although damages have not been allowed for wages lost from the prospective at-will employment, damages have been allowed based upon wages from the prior employment and other damages incurred in reliance on the job offer.

In contrast, other jurisdictions have held as a matter of law that a prospective employee cannot recover damages incurred in reliance on an unfulfilled promise of at-will employment, concluding that reliance on a promise consisting solely of at-will employment is unreasonable as a matter of law because the employee should know that the promised employment could be terminated by the employer at any time for any reason without liability. These courts have stated that an anomalous result occurs when recovery is allowed for an employee who has not begun work, when the same employee's job could be terminated without liability 1 day after beginning work.

### PROMISSORY ESTOPPEL ALLOWED

The following cases have held that a prospective employee had a cause of action for damages incurred in reliance upon a promise of employment. In *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114 (Minn. 1981), a pharmacist working at a drugstore desired employment with a hospital or clinic. He accepted employment with a clinic and gave 2 weeks' notice to the drugstore. During this period, he declined a job with a hospital because he had accepted employment with the clinic. Upon reporting to work, he was told that someone else had been hired because the pharmacist did not satisfy certain hiring requirements of the clinic. He had difficulty obtaining other full-time employment and suffered wage loss as a result.

The clinic argued that the application of promissory estoppel would create an anomalous rule such that an employee who is told not to report to work the day before he is scheduled to begin has a remedy, while an employee who is discharged after the first day does not. In rejecting the clinic's argument and allowing recovery, the court concluded that under the circumstances it would be unjust not to hold the clinic to its promise. The court stated:

[A]ppellant had a right to assume he would be given a good faith opportunity to perform his duties to the satisfaction of respondent once he was on the job. He was not only denied that opportunity but resigned the position he already held in reliance on the firm offer which respondent tendered him.

*Id.* at 116.

The court also recognized that under appropriate circumstances, promissory estoppel could apply even if the employee was fired after he had commenced employment, thus concluding that its ruling would not necessarily create an anomalous result. Since the prospective employment could have been terminated at any time, the court explained that the damages were not what the pharmacist would have earned from the clinic, but, rather, what he lost by quitting the job he held and declining at least one offer of employment elsewhere. See, also, *Gorham v. Benson Optical*, 539 N.W.2d 798 (Minn. App. 1995); *Rognlien v. Carter*, 443 N.W.2d 217 (Minn. App. 1989).

In *Gorham*, summary judgment was granted against the employee, who sued the employer for breach of contract, fraud, and promissory estoppel. The appellate court reversed the summary judgment on the promissory estoppel claim. The employee had been called in September 1993 about a job opportunity with Benson Optical. At the time, he earned $38,000 annually as a manager for LensCrafters. He was offered a position for $50,000 with Benson Optical, and he accepted and gave notice of resignation to LensCrafters. The employee's last day of work for LensCrafters was October 1, and on October 3, he attended Benson Optical's national sales meeting. On October 4, he attended a "getting to know you" meeting which left him with the impression that his employment had been or would be terminated, and on October 15, his employment was officially terminated.

Relying upon *Grouse*, the *Gorham* court found no relevant difference between the prospective Benson Optical employee, who reported for work and was terminated 1 day later, and the employee in *Grouse*, who was denied even 1 day on the job. Both men had relied to their detriment on the promise of a new

job. Neither man had a good faith opportunity to perform his duties.

In *Ravelo v. County of Hawaii*, 66 Haw. 194, 658 P.2d 883 (1983), a police officer resigned from his position in reliance on an offer of employment in another city. His wife resigned her job, and they informed the private school where their children were enrolled that they were being removed from school. Subsequently, the police officer was told that he was not going to be hired, and he and his wife were unsuccessful in attempting to get back their previous jobs. Relying upon the Restatement of Contracts § 90 (1932), the Supreme Court reversed the trial court's dismissal and concluded that promissory estoppel could be applied in the case of a promise of at-will employment.

In *Bower v. AT & T, Technologies, Inc.*, 852 F.2d 361 (8th Cir. 1988), the court distinguished between an at-will employer who fires an employee 1 day after beginning work and an at-will employer who withdraws the offered employment before the employee is given an opportunity to perform. The court stated that an employer who withdraws the offered employment before the employee is given an opportunity to perform fails to keep its promise in any respect. The court concluded that the prospective employee whose offer was withdrawn had a cause of action.

In *Peck v. Imedia, Inc.*, 293 N.J. Super. 151, 679 A.2d 745 (1996), the court stated that the application of promissory estoppel to prospective at-will employees recognizes that there may be losses incident to reliance upon a job offer itself, even though the employer can terminate the relationship at any time. The court concluded that reliance on the promise of at-will employment gave rise to a cause of action for damages flowing from the prospective employee's giving up her prior business and moving to another state. The court stated that the prospective employer's delay in informing the employee of its decision not to employ could give rise to damages based upon the employer's lack of good faith and fair dealing.

In *Sheppard v. Morgan Keegan & Co.*, 218 Cal. App. 3d 61, 266 Cal. Rptr. 784 (1990), the court held that under a theory of either breach of implied covenant of good faith and fair dealing

or promissory estoppel, an investment banker could recover for damages incurred when a prospective employer failed to fulfill its promise of at-will employment. In reliance upon the promise of employment, the banker had resigned his previous employment and arranged to move to another city, signing a lease on an apartment there. Adopting the reasoning of *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114 (Minn. 1981), the court stated: "[A]n employer cannot expect a new employee to sever his former employment and move across the country only to be terminated before the ink dries on his new lease, or before he has had a chance to demonstrate his ability to satisfy the requirements of the job." *Sheppard*, 218 Cal. App. 3d at 67, 266 Cal. Rptr. at 787. See, also, *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264 (9th Cir. 1990).

### PROMISSORY ESTOPPEL NOT ALLOWED

The following cases have held as a matter of law that prospective at-will employees cannot state a claim for promissory estoppel. In *Bakotich v. Swanson*, 91 Wash. App. 311, 957 P.2d 275 (1998), the court rejected the prospective employee's claim for damages incurred in reliance upon a promise of at-will employment. Although the employee alleged that he terminated his prior employment in reliance on the job offer, the court held that the supposed promise was only of at-will employment and that there was no promise or reasonable expectation of permanent employment. Therefore, the court declined to extend contract principles to at-will employment absent a clear and definite promise of permanent employment which would support promissory estoppel.

In *White v. Roche Biomedical Laboratories, Inc.*, 807 F. Supp. 1212 (D.S.C. 1992), the court held that reliance on a promise consisting solely of at-will employment was unreasonable as a matter of law, since the promise created no enforceable rights in favor of the employee other than the right to collect wages accrued for work performed. The court held that to hold otherwise would create an anomalous result insofar as the prospective employee would be placed in a better position than an employee whose at-will employment was terminated at some point after the employee began working.

Similarly, in *Rosatone v. GTE Sprint Communications*, 761 S.W.2d 670 (Mo. App. 1988), the court found that allowing claims of promissory estoppel in cases of unfulfilled promises of at-will employment would create an anomalous result to prior holdings which denied recovery to at-will employees who had commenced work. See, also, *Faust v. Ryder Commercial Leasing & Serv.*, 954 S.W.2d 383 (Mo. App. 1997); *Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co.*, 344 S.W.2d 639 (Mo. App. 1961).

In *Heinritz v. Lawrence University*, 194 Wis. 2d 606, 535 N.W.2d 81 (Wis. App. 1995), the court rejected the claim of promissory estoppel by a prospective employee who had terminated his prior employment in reliance upon an employment offer. The court stated that such reliance did not change the nature of the promise, which was for an at-will relationship that could be terminated at any time by either party without cause.

In *Meerman v Murco, Inc*, 205 Mich. App. 610, 517 N.W.2d 832 (1994), the court stated that to support a claim of promissory estoppel upon an unfulfilled promise of at-will employment, there must be a distinguishing feature which would remove the case from the general rule of at-will employment. The court determined that an employee who was sought out by a prospective employer and induced to leave other employment failed to establish reliance of a kind that would remove the case from the general rule regarding at-will employment. Rather, the court opined that such reliance merely involved the customary and necessary incidents of changing jobs and was not consideration to support a promissory estoppel claim. Compare, *Filcek v Norris-Schmid, Inc*, 156 Mich. App. 80, 401 N.W.2d 318 (1986); *Hackett v Foodmaker, Inc*, 69 Mich. App. 591, 245 N.W.2d 140 (1976).

Having reviewed and considered decisions from other jurisdictions, we conclude under the facts of this case that promissory estoppel can be asserted in connection with the offer of at-will employment and that the trial court erred in granting Obstetricians summary judgment. A cause of action for promissory estoppel is based upon a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee which does in fact induce such action or

forbearance. Here, promissory estoppel is appropriate where Goff-Hamel acted to her detriment in order to avail herself of the promised employment.

We next consider whether the trial court should have granted summary judgment in favor of Goff-Hamel. Although the denial of a motion for summary judgment is not a final order and thus is not appealable, when adverse parties have each moved for summary judgment and the trial court sustained one of the motions, the reviewing court acquires jurisdiction over both motions and may determine the controversy which is the subject of those motions. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998); *Pettit v. Paxton*, 255 Neb. 279, 583 N.W.2d 604 (1998).

In the present context, the questions are (1) whether Obstetricians made a definite promise of employment to Goff-Hamel which Obstetricians reasonably expected or should have expected would induce Goff-Hamel to terminate her present employment; (2) whether Goff-Hamel was, in fact, induced to act by such offer; (3) whether the action taken by Goff-Hamel was detrimental to her; and (4) whether justice requires that Obstetricians reimburse Goff-Hamel for damages incurred as a result of the promise of employment. See *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623 (Ind. App. 1983).

The facts are not disputed that Obstetricians offered Goff-Hamel employment. Apparently, at the direction of the spouse of one of the owners, Obstetricians refused to honor its promise of employment. It is also undisputed that Goff-Hamel relied upon Obstetricians' promise of employment to her detriment in that she terminated her employment of 11 years. Therefore, under the facts of this case, the trial court should have granted summary judgment in favor of Goff-Hamel on the issue of liability.

However, there remains a material issue of fact regarding the amount of damages sustained by Goff-Hamel. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kozicki v. Dragon*, 255 Neb. 248, 583 N.W.2d 336 (1998); *Herman Bros. v. Great West Cas. Co.*, 255 Neb. 88, 582 N.W.2d 328 (1998). Promissory estoppel provides for damages as jus-

tice requires and does not attempt to provide the plaintiff damages based upon the benefit of the bargain. *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793 (1990). For example, the damages sustained by an employee who quits current employment to accept another job are different than the damages sustained by an employee who had no prior employment but may have moved to a new location in reliance upon a job offer. In the latter case, wages from prior employment are not considered in the determination of damages because the party did not give up prior employment in reliance upon the new offer. In neither case are damages to be based upon the wages the employee would have earned in the prospective employment because the employment was terminable at will.

In any event, the amount of damages to be awarded, if any, is a question of fact to be determined from the circumstances of each case, i.e., as justice requires.

We therefore reverse the judgment of the trial court and remand the cause for further proceedings in accordance with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

STEPHAN, J., dissenting.

I respectfully dissent. In my opinion, the district court correctly determined as a matter of law that Goff-Hamel could not proceed under either a breach of contract or a promissory estoppel theory of recovery. I cannot reconcile the result reached by the majority or its rationale with our firmly established legal principles governing at-will employment. As succinctly and, in my view, correctly stated by the district court: "Since plaintiff could have been terminated after one day's employment without the defendant incurring liability, logic dictates she could also be terminated before the employment started."

The majority relies in part on *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114 (Minn. 1981), which concluded that the principles of promissory estoppel set forth in the Restatement of Contracts § 90 (1932) could apply to a termination of at-will employment which occurred before the employee actually started working because "under appropriate circumstances we

believe [Restatement of Contracts] section 90 would apply even after employment has begun." *Grouse*, 306 N.W.2d at 116. However, we held in *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994), that an at-will employee who was discharged a short time after she began working could not, as a matter of law, assert a promissory estoppel claim for damages resulting from resignation of her previous employment. Thus, this essential premise of the holding in *Grouse* is directly contrary to our law. Another basis for the decision in *Grouse,* as quoted in the majority opinion, is that one who is offered employment has "a right to assume he would be given a good faith opportunity to perform his duties to the satisfaction" of the employer. 306 N.W.2d at 116. This concept is foreign to our law and entirely inconsistent with the established principle, acknowledged by the majority, that in the absence of contractual, statutory, or constitutional restrictions, an employer may discharge an at-will employee "whenever and for whatever cause it chooses." *Myers v. Nebraska Equal Opp. Comm.*, 255 Neb. 156, 163, 582 N.W.2d 362, 368 (1998). Accord *Gillis v. City of Madison*, 248 Neb. 873, 540 N.W.2d 114 (1995). See, also, *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 517 N.W.2d 382 (1994). Thus, whether an at-will employee performs in a satisfactory manner is immaterial to the employer's right to discharge, and there is no basis under our law for an assumption that satisfactory performance by such an employee would create an entitlement to continued employment.

The majority also includes *Bower v. AT & T, Technologies, Inc.*, 852 F.2d 361 (8th Cir. 1988), among those decisions recognizing potential liability of the employer under a theory of promissory estoppel, notwithstanding the fact that the promised employment was at will. The federal court in *Bower* applied the substantive law of Missouri. Three months after *Bower* was decided, its reasoning was repudiated by the Missouri Court of Appeals in *Rosatone v. GTE Sprint Communications*, 761 S.W.2d 670 (Mo. App. 1988), which found *Bower* to be in direct conflict with Missouri law established in *Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co.*, 344 S.W.2d 639 (Mo. App. 1961). Referring to the holding in *Bowers* upon which the majority relies in this case, the court in *Rosatone* stated:

If we were to accept the holding in *Bower*, then we would be faced with the prospect of anomalous results such as the following: Suppose plaintiff in this case had not been told not to report to work. Instead, suppose plaintiff packed his belongings, sold his house, and moved himself and his family to a new location to commence employment with defendant. After working one day, plaintiff is discharged. The plaintiff in this example would be denied recovery altogether, although he incurred considerably more "reliance" damages than were alleged by the plaintiff in the case at bar, who, under *Bower* would be allowed to recover.

761 S.W.2d at 673. See, also, *Faust v. Ryder Commercial Leasing & Serv.*, 954 S.W.2d 383 (Mo. App. 1997), holding that under *Morsinkhoff* and *Rosatone*, a promise to hire an at-will employee could not form the basis for promissory estoppel regardless of the nature of damages claimed. The logical inconsistency cited in *Rosatone* as the basis for rejecting *Bower* now exists in our jurisprudence by virtue of the holding of the majority in this case and our prior holding in *Merrick v. Thomas, supra.*

The conflict between the court's decision today and the law of at-will employment is further demonstrated by the manner in which the majority addresses the issue of damages. Goff-Hamel's damage claim is based entirely upon her allegation that after learning on October 3, 1993, that appellee had withdrawn its offer of employment, she was unable to find "comparable" full-time employment until May 15, 1995. The majority acknowledges that under the theory of recovery which it recognizes in this case, damages cannot be "based upon the wages the employee would have earned in the prospective employment because the employment was terminable at will." Following the same logic, damages based upon wage loss during any *interval* between withdrawal of a promise of at-will employment and the securing of "comparable" employment would not be recoverable, because the promised employment could have been terminated by either party at any time after it had begun. Thus, the record reflects no factual basis upon which damages claimed by Goff-Hamel could be awarded under the remedy which the majority recognizes.

I would follow what I consider to be the better reasoned view, that promissory estoppel may not be utilized to remedy an unfulfilled promise of at-will employment. See, *White v. Roche Biomedical Laboratories, Inc.*, 807 F. Supp. 1212 (D.S.C. 1992); *Bakotich v. Swanson*, 91 Wash. App. 311, 957 P.2d 275 (1998); *Faust v. Ryder Commercial Leasing & Serv., supra*; *Heinritz v. Lawrence University*, 194 Wis. 2d 606, 535 N.W.2d 81 (Wis. App. 1995); *Meerman v Murco, Inc*, 205 Mich. App. 610, 517 N.W.2d 832 (1994); *Rosatone v. GTE Sprint Communications, supra*; *Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co., supra*. I acknowledge that this reasoning would produce a seemingly harsh result from the perspective of Goff-Hamel under the facts of this case, but to some degree, this is inherent in the concept of at-will employment. For example, in *Hamersky v. Nicholson Supply Co.*, 246 Neb. 156, 158, 517 N.W.2d 382, 385 (1994), a 22-year employee was discharged " 'without any notification, cause or reason,' " and although this action may seem harsh, we held that it was permissible where there was no contractual provision for employment of specific duration. Similarly, an employer which has made a significant expenditure in training an at-will employee may feel harshly treated if, upon completing the training, the employee immediately utilizes his or her newly acquired skills to secure more remunerative employment with a competitor. If the law of at-will employment were regularly bent to circumvent what some may consider a harsh result in a particular case, its path would soon become hopelessly circuitous and impossible to follow.

Employment for a specific duration imposes certain benefits and burdens upon each party to the relationship. Under our established law, parties wishing to create such a relationship must do so by contract. Where, as in this case, the parties have not chosen to impose contractual obligations upon themselves, it is my view that a court should not utilize the principle of promissory estoppel to impose the subjective expectations of either party upon the other. I agree with the view that in the context of an employment relationship, promissory estoppel "should be construed 'in such a way that it compl[e]ments, rather than undermines, traditional contract principles.' " *White v. Roche Biomedical Laboratories, Inc.*, 807 F. Supp. at 1220,

quoting *Blanton Enterprises, Inc. v. Burger King Corp.*, 680 F. Supp. 753 (D.S.C. 1988). In my opinion, the majority has done just the opposite in this case.

For these reasons, I would affirm the judgment of the district court.

CONNOLLY, J., joins in this dissent.