Filed 3/17/14  Pearson Food Co. v. State Compensation Ins. Fund CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PEARSON FOOD COMPANY, INC., | B242556 |
| Cross-Complainant and Appellant, | |
| v. | (Los Angeles County |
| | Super. Ct. No. KC057585) |
| STATE COMPENSATION INSURANCE FUND, | |
| Cross-Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce H. Minto, Judge.  Affirmed.

Kerendian & Associates, Shab D. Kerendian, Shawn S. Kerendian, Erika P. Licon, Verlan Y. Kwan and Julie R. Woods for Cross-Complainant and Appellant.

Judith D. Sapper, Betty R. Quarles, Isabel C. Lallana and Katrina Manookian for Cross-Defendant and Respondent.

_____

Pearson Foods, Inc. ("Pearson") appeals from the judgment entered after a trial by reference pursuant to Code of Civil Procedure section 639 in favor of State Compensation Insurance Fund ("SCIF") on Pearson's cross-complaint against SCIF alleging causes of actions for breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit and violation of Business and Professions Code section 17200. Pearson's causes of action centered around three workers' compensations claims that Pearson alleged SCIF failed to fully investigate, had mishandled, over-valued and negligently adjusted in various ways resulting in overpayment and setting improper reserves on those claims. Pearson also claimed that as a result of SCIF's conduct Pearson was charged higher insurance premiums and was unable to secure less expensive insurance from another insurance company.

On appeal, Pearson asserts that the trial court erred in entering judgment upon the statement of decision because: (1) the referee's decision did not contain express findings or rule upon certain matters including the breach of contract and quantum meruit causes of action; (2) the referee's findings did not support a ruling in favor of SCIF on the other causes of action, and the referee applied the improper standard of care in assessing the case and incorrectly shifted the burden of proof on Pearson; and (3) the trial court erred in denying Pearson a new trial. As we shall explain, Pearson's claims do not warrant reversal of the judgment and accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Parties and Background of the Case*

Pearson owns and operates a large food and sundries distribution warehouse in Los Angeles County, employing between 35-40 employees. From 2003 through 2005, SCIF, the state's largest workers compensation insurance carrier served as Pearson's workers compensation insurance provider. The workers compensation claims brought by Pearson employees during this time period were investigated and adjusted by SCIF on behalf of Pearson—SCIF paid benefits to the claimants and defended Pearson before the Workers Compensation Appeal Board.

2

At the end of the policy period for 2004-2005 an audit of Pearson's financial records by SCIF revealed that Pearson had under reported its payroll and therefore owed additional insurance premiums to SCIF in the amount of $8,341.61. SCIF ultimately assigned the collection of the unpaid premiums to a third party, Allied Interstate Incorporated ("Allied"). Allied subsequently brought a collection action in the superior court against Pearson on the claim.[1]

B.    *The Cross-Complaint and Discovery Proceedings*

Pearson filed the cross-complaint against SCIF. Pearson claimed that during the period SCIF provided insurance for the company, SCIF failed to fully investigate and mishandled workers compensation benefit claims of three Pearson employees: Franz Herzog, Hernando Aguilar, and Michael Quinones, which in turn resulted in inappropriate increases in the experience modification,[2] setting of reserves for the claims and costs of its insurance premiums.

In March 2010, Pearson propounded discovery requests seeking records pertaining to the handling, reserving, and settlement of workers compensation claims of Herzog, Aguilar, and Quinones.

SCIF objected to the discovery of the claimant's medical records based on privacy concerns, but agreed to the production of medical documents, subject to a protective order. SCIF also asserted an attorney-client privilege and attorney work-product objections in its response to the discovery requests.

In October 2010 Pearson moved to compel further production of "claimant medical records." The trial court granted Pearson's motion and ordered SCIF to "give

---

[1]    Allied is not a party to this appeal, and Pearson does not appeal from that portion of the judgment awarding Allied damages on the complaint.

[2]    The "experience modification" or "ex-mod" is a tool used in the workers compensation insurance industry to compare similar businesses in terms of worker injuries, accidents and workplace safety. The "ex-mod" is reflected by numerical value. An employer's ex-mod number affects the amount of workers compensation premiums that an employer will be charged by a workers compensation insurer.

3

notice to all claimants that their medical records are produced and to provide them with the opportunity to request a protective order." The court further ordered SCIF to produce all claimant medical records.

In November 2010, SCIF filed a motion for protective order. On January 12, 2011, the trial court denied SCIF's motion for protective order, and ruled that "all documents previously ordered to be produced on 10/26/2010 are to be produced."[3] SCIF produced the records, but did not produce a privilege log or otherwise indicate that any records were being withheld on the basis of privilege.

### C.    Trial Reference

In May 2011, the trial court ordered the matter to reference under Code of Civil Procedure section 639, subdivisions (a)(1)-(3). The court stated that the reference was warranted because "The claims and counter claims involve the examination of a long account, which in turn involves extensive medical billings, records and reports [and] [t]he parties have estimated the trial in the case as requiring 55 court days." The order stated the scope of the reference as:

"The issues referred for determination by the referee are:

"All issues of the complaint;

"All issues of the First Amended Cross-Complaint, excepting therefrom any determination as to whether any party's actions were willful, conscious, reckless, done with malice, fraud, or oppression, and any determination regarding entitlement to or an award of punitive damages;

"Included in the above issues to be determined, but not limited to such issues, are:

"The amount of payroll, the proper classification or class code of the involved employees, the proper experience, rating plan, premium discount or other modifiers to apply, and the proper surcharges."

---

[3]    In January 2011, SCIF filed a petition for writ of mandate in the court (case No. B230325) based on the denial of the motion for protective order to prevent or limit disclosure of private medical information of third-party injured workers. State Fund's writ petition was summarily denied.

4

In January 2011, the trial by reference began before the assigned referee, Retired Judge Gregory O'Brien.

In July 2011, Pearson filed a second amended cross-complaint asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and violation of Business and Professions Code section 17200.

Pearson's second amended complaint alleged that SCIF breached the insurance contract, and engaged in bad faith in various ways including: delaying making coverage determinations as to the Herzog, Lopez and Quinones claims; failing to conduct a full and complete investigation of the claims; failing to exercise diligence in processing the claims, overvaluing and overpaying on the claims and setting unreasonable reserves, failing to properly handle and administer the workers compensation insurance and the defense to the workers compensation claims; failing to provide Pearson with information about its coverage; ignoring facts and medical evidence about the claims which would have demonstrated that the claims were false and exaggerated; and failing to maintain proper files and failing to comply with insurance regulations. Pearson's cause of action based on the implied covenant of good faith and fair dealing was based upon the same allegations as the breach of contract claim, and included a request for punitive damages. Pearson claimed that SCIF's conduct (giving rise to the breach of contract, and the implied covenant and statutory violation) harmed Pearson because, as a result Pearson was charged higher insurance premiums by SCIF and was unable to find less expensive workers compensation insurance and liability insurance from another carrier.

During the trial[4] Pearson presented the testimony inter alia of William Wilson, the CEO of Pearson, and Adam Wilson, the Vice President of Pearson. Pearson presented expert testimony of Sam Smith, a claims handling expert, Susan Silberman, an attorney and expert on claims handling and legal support, and Duncan Prince. SCIF's claim adjuster/employees George Ashkharian, Rosa Rodriguez-Cubero, and Christopher

---

[4] The trial before the Referee lasted eight days and occurred on various dates between January 16, 2012 and March 14, 2012.

5

Punzalan also testified. The SCIF employees testified about handling of the claims as to the three claimants, setting medical evaluations, and obtaining medical reports, and the process of determining benefit payments and setting reserves. SCIF presented expert witness William Spiegel, who testified about the proper methods of claims handling for workers compensation claims.

On the fourth day of the trial, Pearson's claims expert, Susan Silberman testified that SCIF had minimal information in the claims files. Her testimony prompted the referee to inquire whether SCIF maintained one or two files for each claim: "the file that's maintained by the adjustor, or are there two files, one maintained by the lawyer and one maintained by the adjustor?" Silberman responded that "[g]enerally for me of course I have two files. I mean, I have a different file than the adjustor . . . ." The Referee asked if "the reason we're not seeing this decision tree is because this is the attorney's decision tree and maybe all that's privileged?" Pearson's counsel interrupted and made the following representation:

"[Pearson's Counsel]: Before you do, let me interject and present one piece of evidence, that the files that were produced to us, there was no hold-back on anything based on privilege, so what we reviewed contained everything." Pearson's counsel stated that during discovery it had requested the "entire file" on each claim, and "what is represented is there was no hold-back, there was no list of privilege documents."

SCIF's trial counsel responded that SCIF had a litigation file, but did not produce it during discovery. SCIF took the position that it was required to produce only the "claim file," and not provide the litigation file. The following exchange then occurred:

"[Pearson's Counsel]: You did not produce the litigation file?

"[SCIF's Counsel]: No, we didn't.

"[Pearson's Counsel]: On what basis? I didn't get a privilege log. I didn't get anything.

"[Referee]: Excuse me, folks.

"[SCIF's Counsel]: That is not the subject of a privilege log.

"[Referee]: . . . This is not a question I can help you with. . . ."

6

Thereafter Referee stated his view that the scope of his powers under the reference order was limited and did not include the power to resolve discovery disputes or to determine whether a violation of a discovery order had occurred. The referee observed that Pearson had a couple of weeks before the next scheduled day of trial proceeding and directed Pearson's counsel to bring the issue of the discovery order violation to the superior court prior to the next scheduled trial date. Pearson's counsel informed the Referee that Pearson would pursue that course of action.[5] Pearson did not, however, file any motion.

---

[5] "[Referee]: We've got a few weeks now between now and the next hearing. If you have a beef with all of this or with [SCIF's counsel] or with what you received, I don't think I'm the guy who can sort this out for you. I think that's Judge Minto. This is a reference trial. This isn't an arbitration. The scope of my duties I think is fairly limited.

"[Pearson's Counsel]: Okay.

"[Referee]: I think the scope of my duties is to decide the facts and the law based on the evidence that's presented to me at the hearing, but you correct me if I'm wrong. Did Judge Minto put me in charge of discovery? Was this also a discovery reference?

"[Pearson's Counsel]: I have to look at the --

"[SCIF's Counsel]: No, it wasn't.

"[Referee]: Yeah, I don't think it was.

"[Pearson's Counsel]: Then we have to file a motion, your Honor, because my understanding was based on what I received, I have everything. . . . [¶] And I think it's unfair to me that in the middle of trial I am told that there's a part of the file that was not produced. There's no privileged log.

"[Referee]: . . . I get it, and you need not belabor the point. I don't think there's any 638(e) reference here as a discovery referee. Consequently, I don't think I have jurisdiction to address your issue. I was just curious. You now are armed with the facts. You have a transcript. Do what you need to do, and I'll see you all in whatever, three, four weeks."

7

*D.     The Referee's Statement of Decision and Entry of Judgment*

On April 30, 2012, the Referee filed a Statement of Decision in the superior court and served the statement on the parties. In the 53-page Statement of Decision, the Referee described the evidence presented by both sides and the applicable law. The Referee summarized the claims as centering on the issue of whether SCIF breached certain alleged standards of care and internal rules in handling the three claims at issue. The statement of decision further summarized the claims as: "Pearson . . . questions the legitimacy and severity of certain injuries. It points to evidence of inconsistencies in the observations, evaluations, prescribed treatments and prognoses offered by various medical examiners seeing the same applicants. Pearson asserts that the adjuster(s) either failed to recognize the alleged inconsistencies, or for unknown reasons saw them but failed to investigate further, and then set reserves far in excess of the realistic expenses that could be anticipated for the claims. [¶] Pearson also alleges that the adjuster(s) failed to maintain appropriate records and notes of their own activities and decision making, and then set arbitrary reserve amounts out of proportion to the realistic value of the claims. … Pearson asserts finally that the adjuster in one instance paid for benefits that were not required, set reserves for lifetime treatment for a soft-tissue injury, and settled the cases at inflated values." After reviewing the evidence, including the expert testimony presented by both parties, the Referee found that Pearson failed to prove its claims. The Referee found that although certain claims may have warranted additional investigation, that Pearson's complaints were trivial, and did not result in significant damage or demonstrate a pattern of negligence or bad faith.

The statement of decision indicated that: Pearson failed to produced evidence that "Herzog was not injured" or that setting a lifetime reserve in that case affected Pearson's "ex-mod" or future premiums. As to the alleged fabricated claim by Aguilar, the Referee concluded that although Pearson suspected fraud, it was never reported to SCIF and the evidence indicated that Quinones's injury occurred and the applicant was telling the truth. The Referee rejected the testimony of Pearson's experts on the handling of Herzog's, Aguilar's and Quinones's claims. The Referee found Susan Silberman unqualified to

8

give medical testimony and found Mr. Smith's testimony on reserve amounts lacked foundation and was unpersuasive. The Referee further found Pearson failed to demonstrate SCIF's conduct damaged Pearson as alleged. Pearson did not file an objection to the statement of decision.[6]

On May 16, 2012, the trial court adopted the statement of decision and incorporated it by reference into the judgment. On May 22, 2012, the judgment was served on all parties.

### E. *Motion For New Trial*

On May 31, 2012, Pearson filed a "Notice of Motion for New Trial and Notice of Motion to Set Aside Judgment" *with the Referee*; Pearson did not file the notice or motion in the superior court. SCIF filed an objection with the court based on Pearson's failure to comply with Code of Civil Procedure section 639. On June 11, 2012, Pearson filed a Notice of Motion for New Trial in the superior court.[7] SCIF opposed the motion on jurisdictional grounds on the basis that it was untimely filed. The motion for new trial was denied for being untimely.

Pearson appeals from the judgment.

### *DISCUSSION*

Before this court, Pearson claims the judgment must be reversed because: (1) the statement of decision upon which the judgment is based did not resolve its causes of action for breach of contract and quantum meruit; (2) the Referee's findings did not support a ruling in favor of SCIF on the other causes of action, the Referee applied the improper standard of care in assessing the case and incorrectly shifted the burden of proof onto Pearson; and (3) the trial court erred in denying Pearson a new trial. We address these arguments in turn.

---

[6] The Referee also found for Allied on its claims against Pearson as alleged in the complaint.

[7] Pearson also filed a motion to vacate the judgment. The court denied the motion. The order denying the motion is not at issue in this appeal.

9

*I.      Resolution of the Breach of Contract and Quantum Meruit Claims*

Pearson asserts that the court entered judgment without ruling on all the matters raised in the second amended complaint.  Specifically, Pearson complains the Referee failed to rule on its breach of contract and quantum meruit causes of action and failed to address the issue of whether SCIF counsel represented Pearson before the Workers Compensation Appeal Board.[8]

Pearson is correct that the statement of decision's "Findings and Determinations" did not *expressly* identify or specifically address which of the findings and determinations, if any, pertained to the breach of contract and quantum meruit claims.  However, Pearson did not file any objection to the statement of decision in the trial court on that basis.  In addition, the findings on these claims are subject to the doctrine of implied findings.

"The doctrine of implied findings is based on our Supreme Court's statutory construction of [Code Civ. Proc.] section 634 and provides that a 'party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . .  [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment.'"  (*SFPP, L.P. v. v Burlington Northern & Santa Fe Railway Co.* (2004) 121 Cal.App.3d 452, 462, citation omitted [holding that findings may be implied in a statement of decision in reference proceedings].)  The doctrine (1) directs the appellate court to presume that the

_____

[8]      Pearson's opening brief concedes that SCIF's attorneys represented Pearson before the Workers Compensation Appeals Board in connection with the three claims at issue.  SCIF does not dispute this fact.  Pearson has not articulated how the Referee's failure to make a factual finding on the representation issue in the statement of decision affects the outcome of the issues on appeal.  To the extent that Pearson has raised this matter to suggest that the Referee failed to rule that SCIF carried out its obligation to defend it before the WCAB, such an argument is implicitly rejected by the Referee's findings on damages.  As discussed in more detail here, the Referee concluded in the statement of decision that Pearson failed to demonstrate that SCIF's actions in relation to the three claimants' cases resulted in damage.

10

trial court made all factual findings necessary to support the judgment so long as substantial evidence supports those findings and (2) applies unless the omissions and ambiguities in the statement of decision are brought to the attention of the superior court in a timely manner. (*Ibid.*) Similarly, the failure to make a finding on an issue raised in the pleadings is harmless when the missing finding reasonably may be found to be implicit in other findings. (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 527, overruled on another ground, *Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163.)

Here, as we shall explain, based on the causes of action pled in the second amended complaint, the evidence in the record and the statement of decision, we conclude that Pearson's breach of contract and quantum meruit claims were implicitly rejected by the Referee.

     *A.     The Quantum Meruit Cause of Action*

A quantum meruit or quasi-contractual recovery rests upon the theory that a contract to pay for services rendered is implied by law for reasons of justice. (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419-1420.) Quantum meruit is therefore, an equitable theory that supplies, by implication and in furtherance of equity, missing contractual terms. Nonetheless, it is well established that no equitable basis for an implied-in-law contract exists when the parties have an actual agreement governing the matter at issue. (*Ibid.*) Contractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject. (See *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 688, 700, fn. 42 [There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.].)

Here it was uncontroverted that SCIF and Pearson's relationship was governed by a valid, express written contract for insurance that existed between them during the time periods at issue in these claims—2003 through 2005. The Referee made reference to the contractual relationship in its statement of decision, and on the basis of the express contract awarded Allied damages on the complaint for the unpaid premiums owed by

11

Pearson. Likewise, Pearson did not present any evidence or argument that there were any missing terms from the contract of insurance that should have implied by reason of equity or that the contract was invalid or void. As a result, the Referee's failure to specifically resolve the quantum meruit claim in the statement of decision is not error; the rejection of the claim reasonably may be found to be implicit in other findings relating to the contract between SCIF and Pearson.

### B. The Breach of Contract Claim

A determination of whether Pearson's breach of contract cause of action was implicitly resolved in the statement of decision requires an examination of the relationship between the breach of contract claim and another cause of action addressed in the decision, namely, the breach of the implied covenant. We turn first to the legal relationship between these causes of action and then to the manner in which they were pled in the cross-complaint, presented at trial and resolved in the Referee's decision.

Every contract imposes on each party a duty of good faith and fair dealing in its performance and in its enforcement. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818.) The burden imposed is "'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573, quoting *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658.) Stated another way, the "implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." (*Schoolcraft v. Ross* (1978) 81 Cal.App.3d 75, 80.) This rule was developed "in the contract arena and is aimed at making effective the agreement's promises." (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 683.) The "precise nature and extent of the duty imposed . . . will depend on the contractual purposes." (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 818.)

In *Foley*, the Court emphasized that an alleged breach of the implied covenant is a claim founded upon contract and that a careful distinction must be maintained between "ex-delicto" and "ex-contractu" obligations. "When a court enforces the implied covenant it is in essence acting to protect 'the interest in having promises performed'

12

[citation]. . . ." (*Foley v. Interactive Data Corp, supra,* 47 Cal.3d at pp. 689-690.) This is the traditional function of a contract action. A tort action, on the other hand, redresses the breach of the general duty to society that the law imposes without regard to the substance of the contractual obligation. "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." (*Id.* at p. 690.)[9]

In short, it is an implied-in-law term of the contract and the elements of the claims are similar. The elements of a breach of contract are: (1) existence of contract; (2) plaintiffs' performance or excuse for nonperformance; (3) defendants' breach; and (4) resulting damage. (See *Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1391, fn. 6.) The elements of a cause of action for breach of covenant of good faith and fair dealing are: (1) existence of contractual relationship; (2) implied duty; (3) breach; and (4) causation of damages. (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49.) A breach of the implied covenant may result in a breach of the contract, although a breach of a consensual (i.e., an express or implied-in-fact) contract term will not necessarily constitute a breach of the covenant. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393-1395; see *Carma Developers (Cal.) Inc. v. Marathon Development California, Inc*. (1992) 2 Cal.4th 342, 373 [To prove a breach of the implied covenant, it is not necessary that plaintiff

---

[9]       This notwithstanding, as the Court recognized in *Foley,* in insurance cases there is a well-developed history recognizing a tort remedy for a breach of the implied covenant. (*Foley v. Interactive Data Corp, supra,* 47 Cal.3d at p. 684.) A review of those cases demonstrates that the existence of this remedy has been justified by the "special relationship" existing between insurer and insured, which is characterized by elements of public interest, adhesion and fiduciary responsibility. (*Egan v. Mutual of Omaha, supra,* 24 Cal.3d at p. 820.) In addition, it is essential to a recovery in tort that the insurer, in breaching the implied covenant, have acted unreasonably (*id.*, at p. 818; *Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 575) or without proper cause (*Neal v. Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 920; *Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 574; *Suarez v. Life Ins. Co. of North America* (1988) 206 Cal.App.3d 1396, 1407).

13

show that a specific contractual provision was breached; "[w]ere it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract"].)

As a result, the same conduct does not necessarily result in a breach of both a consensual contract term and the implied covenant of good faith. (See, for example, *Schoolcraft v. Ross, supra,* 81 Cal.App.3d at pp. 80–81; *Wilkerson v. Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1230–1231; *Sheppard v. Morgan Keegan & Co.* (1990) 218 Cal.App.3d 61, 66–67.)[10] Thus, the court's resolution of the breach of the implied covenant cause of action does not necessarily imply findings as to the breach of contract claim. However, where the breach of contract and implied covenant claims are pled identically – relying on the same underlying alleged acts, or allegedly resulting in the same damage, and where the trier of fact determines that the underlying conduct did not occur or did not result in any compensable or material injury, then the court's findings about the underlying conduct and damages resolves both causes of action. Such is the situation here.

---

[10]    For example, in *Schoolcraft*, the court awarded contract damages to the trustor under a deed of trust upon the theory that the beneficiary's conduct, in applying fire insurance proceeds to the secured debt rather than to the reconstruction of the insured residence, was a breach of the covenant of good faith implied in the trust deed. While such choice was permitted by the express terms of the trust deed, and thus there was no breach of those terms, the court found that the choice had been made in bad faith and had deprived the trustor of the benefit of the agreement without necessarily enhancing the beneficiary's security. (*Schoolcraft v. Ross, supra,* 81 Cal.App.3d at pp. 80-81.) In *Wilkerson*, plaintiff sued on an alleged contract of employment that he would not be terminated except for cause. The court held that even though the employer may have had a good faith belief that such "good cause" existed, such belief would be a defense only to an action for breach of the covenant, but would not provide a defense to breach of contract. (*Wilkerson v. Wells Fargo Bank* (1989) 212 Cal.App.3d at pp. 1230-1231.) In *Sheppard*, the plaintiff had left his stock analyst position in California to accept a similar job in Tennessee but was terminated before he could begin work. The court held that while there was no agreement not to terminate except for cause, and thus no breach of a consensual contract term, the implied covenant of good faith required that the employer at least give the new employee an opportunity to demonstrate his ability to satisfy the requirements of the job. (*Sheppard v. Morgan Keegan & Co., supra,* 218 Cal.App.3d at p. 66-67.)

In the operative cross-complaint, Pearson alleged that SCIF breached the terms of insurance contract by: delaying making coverage determinations as to the Herzog, Lopez and Quinones' claims; failing to conduct a full and complete investigation of the claims; failing to exercise diligence in processing the claims, overvaluing and overpaying on the claims and setting unreasonable reserves; failing to properly handle and administer the workers compensation insurance; failing to present a defense to the workers compensation claims; failing to provide Pearson with information about its coverage; ignoring facts and medical evidence about the claims which would have demonstrated that the claims were false and exaggerated; and failing to maintain proper files and failing to comply with insurance regulations. Pearson's cause of action for breach of the implied covenant of good faith and fair dealing expressly incorporated the same factual allegations pled in support of the breach of contract claim.[11]

In addition, Pearson also alleged each cause of action resulted in identical harm. Pearson claimed that SCIF's conduct giving rise to the breach of contract, and the implied covenant claim damaged Pearson in the same manner – as a result of SCIF's actions Pearson was charged higher insurances premiums by SCIF, was unable to find less expensive insurance workers compensation and liability insurance from another carrier and paid excessive amounts on each of the claims.

Furthermore, in terms of what Pearson sought to prove at trial, again Pearson made no distinction between the two causes of action. Specifically with respect to the Herzog claim, Pearson sought to demonstrate that Herzog's 2004 workplace injury to his shoulder caused him no permanent disability and required no future treatment, and his persistent complaints about neck and shoulder pain were exaggerated and inconsistent with medical evidence and his active lifestyle post-injury. Pearson sought to show that SCIF paid excessive medical expenses and set reserves for the claim that were too high

_____

[11]    The only meaningful distinction between the two claims is that Pearson sought an award of punitive damages on its implied covenant claim.

15

and unjustified. Pearson also sought to show that even though there was no future treatment indicated for Herzog, as of the trial, the claim remained open.

Concerning the workers compensation case of Mr. Aguilar, Pearson sought to show that the alleged repetitive motion injuries to his back, hands, ankle and knees and his complaints of pain were exaggerated, and that Mr. Aguilar gave inconsistent information to three different medical providers about how he sustained the injuries. Pearson also sought to demonstrate that SCIF mishandled Mr. Aguilar's claim for vocational rehabilitation. In addition, Pearson sought to prove that SCIF ignored information about the claim and failed to investigate whether the claim of injury was fabricated. Pearson further attempted to show that both reserves setting and the SCIF settlement of $18,000 for the claim were too high.

Finally, with respect to the claim of Mr. Quinones, Pearson sought to prove that SCIF's resolution of the claim failed to take into account that Mr. Quinones suffered from pre-existing injuries, and thus failed to properly apportion responsibility to Mr. Quinones's prior employer. Pearson also claimed that SCIF failed to investigate claims that Mr. Quinones had engaged in fraud because at the time he was receiving workers compensation benefits, including vocational rehabilitation, from SCIF, he was active and employed by a different company. Pearson claimed that SCIF mishandled the workers compensation case and set reserves for that case that were too high and unjustified based on the injuries.

The statement of decision summarized the evidence presented during the trial with respect to the three cases. Thereafter in the decision, the Referee assessed Pearson's factual and legal contentions in light of the evidence presented about each case. With respect to the Herzog claim the Referee found that "no evidence was produced that Herzog was not injured" or that "he was playing golf during the time of his treatment." The Referee further found that SCIF's adjuster's setting of reverses was not unjustified or excessive in light of the evidence presented at trial. The Referee also noted that the impact of the reserves on Pearson's "ex-mod, if calculable was not identified" even though the claim remained "open." The Referee concluded that "[a]t the end of the day, I

16

am persuaded that Pearson's dispute on this issue is a quibble that does not support significant damages."

With respect to the Aguilar claim, the Referee found that "more investigation on this claim may have been warranted, but I am not persuaded that the history of his injury that Aguilar gave to the three physicians constituted multiple and therefore fabricated versions of a single event." The Referee further found that if Pearson had reason to suspect that Aguilar's claim was fraudulent, Pearson never reported it to SCIF even though SCIF had requested that Pearson provide such information if Pearson had reason to doubt the validity of the claim. In the statement of decision the Referee stated that Pearson had failed to prove any additional investigation of the claim would have revealed the claim to be fraudulent, and found: "I cannot on the basis of the evidence find that Aguilar's claim was fraudulent." The Referee also concluded that neither the settlement nor the payment of the vocational rehabilitation benefits as part of the settlement was excessive or shown to affected Pearson's ex-mod.

As to the Quinones claim, the Referee found that Pearson failed to demonstrate error with respect to the apportionment of the claim between Pearson (80 percent) and Quinones's prior employer (20 percent) and that Pearson failed to show how the apportionment affected Pearson's ex-mod or payment of premiums. Similarly, the Referee found that Pearson failed to demonstrate error with respect to setting the reserves on the claim. The Referee further concluded that Pearson failed to prove that Quinones had engaged in fraud with respect to his work for another employer while he was receiving vocational rehabilitation benefits from SCIF. While the Referee agreed that the matter could have merited additional investigation, the evidence did not support a finding that Quinones engaged in fraud or was disqualified from receiving the benefits provided.

On the issue of damages, the referee found Pearson's evidence that it suffered damage as a result of SCIF's action, namely that it paid higher insurance premiums or that it could not obtain less expensive insurance from another carrier, was not persuasive and that the damage claim was based on expert testimony that was lacking in foundation in the evidence. Specifically, the Referee found: "After a review of the evidence, I am

17

persuaded that a few isolated acts of adjuster negligence may have led to the payment of unwarranted or higher benefits, but in all but a few relatively minor instances, the evidence on damages does not support a judicial finding that more thorough investigations would have led to more favorable results." The Referee also found that Pearson "failed to meet its burden of demonstrating that the loss reserves set for the three subject claims were excessive" and that Pearson has "failed to sustain its burden of proof as to damages."

In light of the manner in which the breach of contact and the implied covenant actions were pled, the evidence presented during the trial and the findings and conclusions of the Referee in the statement of decision, we conclude that the Referee did not err in failing to specifically address the breach of contract claim in the decision because the Referee implicitly rejected the contract cause of action when he concluded that the underlying acts did not occur as alleged, or were not support by the evidence presented, or were minor and immaterial failings on the part of SCIF adjusters. Moreover, the Referee's findings and determinations on the issue of damages – that Pearson had "failed to sustain its burden of proof as to damages" – applies to the breach of contract claim in the cross-complaint. Thus, the omission of a separate finding on the contract claim does not amount to reversible error.

## II. *Rulings on the Other Claims in the Cross-Complaint*

Pearson complains that the Referee erred: (1) in finding that Pearson failed to carry its burden of proof on its causes of action with respect to SCIF's adjusting, investigation and payment of the workers compensation claims; (2) in failing to find in its favor on the claims based on the evidence presented that showed a pattern of negligence in support of a finding of bad faith; and (3) in failing to apply the proper standard of care to the analysis.

Turning first to the contentions about the allocation of burden of proof and the findings and evidence on the issue of negligence and bad faith, in the statement of decision the Referee concluded that Pearson bore the burden of proof with respect to its causes of action and that Pearson failed to demonstrate a pattern of negligence amounting

to bad faith. The Referee specifically rejected Pearson's argument that the burden of proof should shift to SCIF to prove the appropriateness of its conduct in handling the claims. At several places in the statement of decision the Referee noted that Pearson had failed to present persuasive evidence supporting its contention that SCIF mishandled the claims and that any failure to investigate resulted in measurable harm.

Underlying Pearson's arguments on appeal are the contentions that SCIF improperly withheld certain documents during discovery that denied Pearson the opportunity to demonstrate its claims, and that the Referee improperly concluded this discovery dispute was beyond the scope of the Code of Civil Procedure section 639 reference order. Pearson argues that because the Referee did not resolve the discovery issue, it was unable to prove its case against SCIF. It further maintains that in light of SCIF's conduct, the Referee should have found that the burden of proof shifted to SCIF. Pearson maintains that in light of the failure to resolve the discovery issue and its effect on the outcome of the decision below, this court should reverse the judgment.

Our analysis thus begins with an examination of the scope of the Referee's authority and of the Referee's ruling on the discovery dispute during the trial.

A reference by the trial court involves the sending of a pending action, or some issue raised in the proceeding, to a referee for hearing, determination and report back to the court. The procedure is most commonly employed where complicated accounts can more conveniently be examined or taken outside of court, and to resolve discovery disputes or certain types of family law issues. (See generally, *DeGuere v. Universal City Studios, Inc.* (1997) 56 Cal.App.4th 482, 496-497.)

The Code of Civil Procedure provides for two types of reference. A "general" reference is conducted pursuant to Code of Civil Procedure section 638, subdivision (1), which authorizes the trial court to refer any or all issues to a referee for trial and determination, provided that the parties have agreed thereto in an agreement filed with the clerk or judge or entered in the minutes or docket.[12] (*Ibid; Ruisi v. Thieriot* (1997) 53

19

Cal.App.4th 1197, 1208.)  Such agreement of the parties is required in order to comport with the constitutional prohibition against delegation of judicial power.  (*Ibid.*)  The finding and determination of the referee upon the whole issue must stand as the finding of the court and judgment may be entered thereon in the same manner as though the matter had been tried by the court.  (*Estate of Bassi* (1965) 234 Cal.App.2d 529, 536.)

This case involves the second type of reference: a "special" reference, conducted pursuant to Code of Civil Procedure section 639.  Under Code of Civil Procedure section 639, the findings of the referee are advisory only, and do not become binding unless adopted by the court; the court must independently consider the referee's findings before acting.  (*Ruisi v. Thieriot, supra,* 53 Cal.App.4th at p. 1208.)  The consent of the parties is not required; however, such nonconsensual reference is authorized under the statute only in certain specified and limited circumstances: "(a) When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein.  [¶]  (b) When the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect.  [¶]  (c) When a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action.  [¶]  (d) When it is necessary for the information of the court in a special proceeding.  [¶]  (e) When the court in any pending action determines in its discretion that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the

___

12     Code of Civil Procedure section 638 provides: "A reference may be ordered upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes or in the docket, or upon the motion of a party to a written contract or lease which provides that any controversy arising therefrom shall be heard by a reference if the court finds a reference agreement exists between the parties:

"1. To try any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision thereon;

"2. To ascertain a fact necessary to enable the court to determine an action or proceeding."

20

action and to report findings and make a recommendation thereon." (Code Civ. Proc., § 639.)

The statutory scheme carefully preserves the distinction between general and special references in order to comply with the constitutional mandate regarding the delegation of judicial power. "[A] general reference has binding effect, but must be consensual, whereas a special reference may be ordered without consent but is merely advisory, not binding on the [ ] court. [Citations.]" (*Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, 436.)

Thus, special reference orders are construed narrowly to limit the scope of the referee's authority to the precise terms of the order as permitted by the statute. (See e.g., *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1525 [finding the referee's ruling granting summary judgment exceeded the scope of the Code of Civil Procedure section 639, subdivision (e) reference; reference to designated referee for purpose of hearing and determining summary judgment motions, in employment discrimination action, was beyond trial court's authority since, without requisite consent to make general reference, the court had authority only to make special reference, however, such power is limited by statute, and hearing and ruling upon a summary judgment motion was not explicitly authorized by statute]; *De Guere v. Universal City Studios, Inc.* (1997) 56 Cal.App.4th 482, 500-502 [finding the referee exceeded the scope of the Code of Civil Procedure section 639 reference in making findings on the interpretation and enforceability of the parties' contract, where reference limited referee's authority to determining the proper accounting methodology to be applied to the dispute].)

Here the trial court ordered the case to reference under Code of Civil Procedure section 639, subdivisions (a)(1), (2), and (3). The reference order limited the issues for determination to: "All issues of the complaint; and all issues of the First Amended Cross-Complaint, excepting therefrom any determination as to whether any party's actions were willful, conscious, reckless, done with malice, fraud or oppression and any determination regarding the entitlement to or an award of punitive damages." The reference order did not refer to Code of Civil Procedure section 639, subdivision (e) or

otherwise indicate that the referee had the authority to resolve discovery issues or disputes or rule on the violation of discovery orders. Thus, on the face of the reference order, it appears that the Referee properly referred the matter to the trial court, correctly concluding that the scope of his powers under the reference order was limited.

Thus the Referee properly directed Pearson's counsel to bring the issue of the discovery order violation to the superior court prior to the next scheduled trial date. Once the Referee refused to decide the discovery issue, Pearson's remedy was to file a motion in the superior court. At the time Pearson's counsel informed the Referee that it would seek redress in the trial court. However, Pearson did not follow through.

Before this court, Pearson attempts to excuse its inaction, claiming that it would have been too difficult to "switch gears" during the trial at that point and that because discovery had "closed" any effort to obtain redress would have been futile. These arguments are not persuasive. First, the trial was only mid-way complete at the time this issue arose and as the Referee observed Pearson had a number of weeks before the next scheduled trial proceedings – sufficient time to obtain a ruling on the matter. The Referee also appeared to be open and willing to change course or re-open certain areas of inquiry depending on the resolution of discovery issue.

Second, assuming for the sake of argument that SCIF's failure to produce documents violated one of the court's discovery orders, the trial court had a number of possible options at its disposal to remedy the situation, including imposing issue and evidence preclusion sanctions, or monetary sanctions, or even terminating sanctions. Indeed, the trial court has broad discretion to impose sanctions for violations of court orders, including those intended to compel compliance with a party's disclosure and discovery obligations. (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297; see, e.g., *Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 489 ["[w]here, as here, the record is replete with instances of delay and failure to comply with a court order, dismissal may be proper," disapproved on another point by *Garcia v. McCuthchen* (1997) 16 Cal.4th 469, 478, fn. 4]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 ["'where a violation is willful, preceded by

a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction'"].)

Pearson's failure to raise the discovery issue in the trial court amounts to a forfeiture of any complaints on appeal that SCIF violated the discovery orders; and that the Referee misallocated the burden of proof at trial based on SCIF's conduct during discovery.

Moreover, it also deprives Pearson of a persuasive argument that the Referee erred in concluding that Pearson failed to carry its burden on the issues at trial. The effect of failing to pursue the discovery issue means that Pearson did not have evidence it needed to support its contentions. As discussed elsewhere here, the Referee found that Pearson had not supported a number of it contentions with any evidence and/or that the evidence presented was unconvincing. Based on our review of the record and in light of the deferential standard of review applied to the trier of fact's assessment of the evidence and credibility of the witnesses at trial, we agree with the Referee's resolution of the causes of action in the case. The Referee properly concluded that Pearson failed to demonstrate that it suffered any damage as a result of SCIF's conduct.

Likewise Pearson has not presented a winning argument that the Referee failed to identify and apply the appropriate standard of care in assessing SCIF's conduct. The statement of decision identified and described the legal and regulatory standards governing workers compensation carriers in detail, and the decision discloses that the Referee sought to apply those standards to the evidence presented during the trial. The Referee also heard evidence from expert witnesses presented by both parties on the application of the standards of care. Although the Referee disregarded some of that expert testimony for various reasons,[13] we perceive no error with respect to the Referee's application of the standard of care evidence to the resolution of the case.

---

[13]     The Referee granted Pearson's motion to strike portions of SCIF's expert's testimony on the issue of the reasonability of the carrier's reserves. The Referee

23

*III.    The New Trial Motion*

Before this court, Pearson argues that the trial court should have granted a new trial on the grounds of "irregularity and surprise" resulting from SCIF's "abuse of the discovery process." The trial court denied the motion finding that it lacked jurisdiction to decide the merits because it was not timely filed. The trial court did not err.

A party intending to file a motion for a new trial must file notice of intention to move for a new trial with the court clerk and serve on each adverse party "[b]efore the entry of judgment." (Code Civ. Proc., § 659, subd. (a)(1).) Otherwise, it must be brought by the earliest of three deadlines: (1) within 15 days of "the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5"; (2) within 15 days of service on the moving party "by any party of written notice of entry of judgment"; or (3) "within 180 days after the entry of judgment." (Code Civ. Proc., § 659, subd. (a)(2).) The 60 days during which the trial court has jurisdiction to rule on such a motion is similarly linked to the clerk's mailing or a party's service of written notice of entry of judgment. (Code Civ. Proc., § 660.) Thus, under the express terms of Code of Civil Procedure sections 659, and 660, the time limits for bringing and ruling on motions for a new trial start to run either on the date of the court clerk's mailing or on the date of service on the moving party of notice of entry of judgment. Failure to comply with the filing and timing provisions of Code of Civil Procedure section 659, deprives the trial court of jurisdiction to rule on the merits of the motion. (*Smith v. Superior Court* (1976) 64 Cal.App.3d 434, 437 [It has long been held that the power to grant a new trial may be exercised only by following the statutory procedure and is conditioned upon the timely filing of a motion for new trial].)

Here on May 16, 2012, the trial court adopted the statement of decision and incorporated it by reference into the judgment, and on May 22, 2012, the judgment was

---

disregarded Pearson's expert witness's testimony concerning damages. Similarly, the Referee found Pearson's claims legal support expert unqualified to present medical testimony and found Pearson's claims handling expert's testimony on reserve amounts lacked foundation, and was unpersuasive.

served on all parties.  Thereafter, on May 31, 2012, Pearson filed a "Notice of Motion for New Trial and Notice of Motion to Set Aside Judgment" *with the referee*.  Pearson did not file the notice or motion for a new trial in the superior court until June 11, 2012.  Although Pearson's May 31 notice was submitted to the Referee within 15 days after it was served with the judgment, Pearson did not file that notice with the superior court clerk as required by Code of Civil Procedure section 659.  Pearson has not submitted any authority which holds that service on a referee satisfies the statutory requirement that the notice be filed with the clerk of the court.  Thus, Pearson's May 31 notice did not comply with the filing requirements of Code of Civil Procedure section 659 and therefore it did not preserve the trial court's jurisdiction to decide the merits of the motion.  Likewise, although Pearson's subsequent motion for a new trial was filed with the superior court clerk, it was filed on June 11, 2012 – more than 15 days after service of the judgment and thus was filed too late.  In view of these circumstances, we conclude that the trial court properly denied the motion for new trial.

## *DISPOSITION*

The judgment is affirmed.  Respondent is entitled to its costs on appeal.

WOODS, J.

We concur:

PERLUSS, P. J.                                                                ZELON, J.

25